UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

                 Plaintiff,                Civil No. 24-cv-10936

vs.                                  Honorable

$172,380.00 U.S. Dollars seized
from Maro Jewelers, Inc.,

                 Defendant *in Rem*.

_____/

## COMPLAINT FOR FORFEITURE

Plaintiff, the United States of America, by and through Dawn N. Ison, United States Attorney for the Eastern District of Michigan, and K. Craig Welkener, Assistant United States Attorney, states upon information and belief in support of this Complaint for Forfeiture as follows:

## JURISDICTION AND VENUE

1.    This is an *in rem* civil forfeiture action pursuant to 18 U.S.C. § 981(a)(1).

2.    This Court has original jurisdiction over this proceeding pursuant to 28 U.S.C. § 1345 because this action is being commenced by

the United States of America as Plaintiff.

3.      This Court has jurisdiction over this forfeiture action pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts giving rise to the forfeiture occurred in the Eastern District of Michigan.

4.      Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in the Eastern District of Michigan.

5.      Venue is also proper before this Court pursuant to 28 U.S.C. § 1395(c) because the Defendant *in rem* is located in the Eastern District of Michigan.

## SUMMARY

6.      The Defendant *in rem*—$172,380.00 U.S. Dollars seized from Maro Jewelers, Inc. ("Defendant Cash")—is one asset seized as part of a broader investigation of organized groups robbing jewelry stores around the United States, often returning with their loot to Michigan and selling it for discount prices to a "fence" who typically

2

then resells at a profit.   Defendant Cash is subject to forfeiture on two basic legal theories: (1) as property involved in money laundering under 18 U.S.C. § 981(a)(1)(A), and/or (2) as proceeds of underlying criminal offenses under 18 U.S.C. § 981(a)(1)(C).

## UNDERLYING CRIMINAL STATUTES

7.     18 U.S.C. § 1956 sets forth a list of "specified unlawful activities," which includes any activity or act constituting an offense listed in 18 U.S.C. § 1961(1) and 18 U.S.C. § 1956(c)(7). Each of the underlying crimes here—18 U.S.C. § 1951 (Hobbs Act Robbery, and attempt and conspiracy to commit the same); 18 U.S.C. §§ 2314 and 371 (Interstate Transportation of Stolen Property and conspiracy to commit the same); and 18 U.S.C. §§ 2315 and 371 (Receipt, Possession, and Sale of Stolen Property and conspiracy to commit the same)—are all specified unlawful activities.

8.     18 U.S.C. § 1956(a)(1) prohibits knowingly conducting a financial transaction involving the proceeds of "specified unlawful activity," knowing that the transaction is designed in whole or in part

3

to: conceal or disguise the nature, the location, the source, the ownership, or the control of such proceeds; or, avoid a transaction reporting requirements.

9.    18 U.S.C. § 1957 prohibits knowingly engaging, or attempting to engage, in a monetary transaction with proceeds of a specified unlawful activity in an amount greater than $10,000 by, though, or to a financial institution.

10.    18 U.S.C. § 1956(h) prohibits conspiring to commit an offense in violation of 18 U.S.C. §§ 1956 or 1957.

## STATUTORY BASIS FOR CIVIL FORFEITURE

11.    18 U.S.C. § 981(a)(1)(A) provides for the forfeiture of "Any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property."

12.    18 U.S.C. § 981(a)(1)(C) provides for the forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to any offense constituting "specified unlawful activity," or a

conspiracy to commit such offense, including 18 U.S.C. § 1951 (Hobbs

Act Robbery, and attempt and conspiracy to commit the same); 18

U.S.C. §§ 2314 and 371 (Interstate Transportation of Stolen Property

and conspiracy to commit the same); and 18 U.S.C. §§ 2315 and 371

(Receipt, Possession, and Sale of Stolen Property and conspiracy to

commit the same).

## GENERAL ALLEGATIONS

13.    On April 5, 2021, Defendant Cash was seized from Maro

Jewelers, Inc, in Oak Park, Michigan, pursuant to a federal search

warrant that is currently under seal.

14.    The search warrant occurred as part of an FBI investigation

of suspected violations of 18 U.S.C. § 1951 (Hobbs Act Robbery, and

attempt and conspiracy to commit the same); 18 U.S.C. §§ 2314 and 371

(Interstate Transportation of Stolen Property and conspiracy to commit

the same); and 18 U.S.C. §§ 2315 and 371 (Receipt, Possession, and Sale

of Stolen Property and conspiracy to commit the same) in connection

with a series of robberies and larcenies and attempts at jewelry stores

that have occurred over a period of years and at multiple locations throughout the country, by highly-organized groups.

15.    From August 2018 to April 2021, more than 30 such incidents had occurred in Michigan and other states, in which the perpetrators used a similar *modus operandi*.  Investigation as of April 2021 had shown that many of the robberies and attempts involved individuals who live in the Detroit, Michigan, area and were planning and coordinating the robberies from the Detroit area.

16.    **Related criminal cases** include the following: *United States v. Reed, et al.*, Case No. 19-CR-20492 (Eastern District of Michigan); *United States v. Moore, et al.*, Case No. 4:22-CR-00037 (Northern District of Texas) (see also *United States v. Moore,* District of Connecticut Case No. 3:15-cr-00046); and *United States v. Cooksey*, Case No. 2:21-CR-20669 (Eastern District of Michigan).

17.    In executing the search, federal agents seized not only the Defendant Cash, but also jewelry, including numerous jewelry items that had been involved in recent robberies.  *See* Exhibit A, attached.

18.    In the "smash-and-grab" robberies under investigation and prosecution, typically two or more individuals entered a jewelry store, used a sledgehammer to break display cases, grabbed jewelry (often loose diamonds) from the cases, and then fled the store.  A getaway vehicle, most commonly a Chrysler product, was waiting outside the jewelry store for the suspects to get into and flee.  In addition, the suspects often surveilled, or "cased," the targeted jewelry stores prior to the robberies to learn where specific jewels were located.

19.    In the "grab-and-go" larcenies under investigation, typically one or two women would enter a jewelry store, inquire about certain diamonds, and request to look at the stones.  At an opportune time, one of the women then grabbed the diamond(s) and ran out of the jewelry store.

20.    **Fencing Stolen Items**: items stolen from businesses or private individuals are often sold, either on the street or to a person or business known as a "fence."  A fence is a middleman between thieves and consumers.  A fence buys stolen goods from a thief, often at a

7

discount.  Then the fence typically resells the item for a higher price to an unsuspecting consumer, who does not know the item is stolen.  The difference between the price the fence pays the thief and the price for which the fence resells the stolen item creates a profit for the fence.

21.   A fence usually pays the thief a substantially smaller amount than the true value of the stolen item.  The thief is willing to accept a lower amount because he benefits by obtaining an immediate profit and reducing the amount of time he remains in possession of stolen goods, while the fence takes on the risk of possessing, and potentially being caught reselling, the stolen goods.

22.   To reduce the risk of detection, a fence will conceal the stolen nature of the items purchased from thieves by simultaneously operating an otherwise-legitimate business, including by buying and selling non-stolen jewelry, and intermingling the funds gained from fencing operations and normal business operations.

23.   Maro Jewelers, Inc., has operated as a fence in this manner on numerous occasions, buying and selling stolen jewelry.

24.    As Exhibit A demonstrates, at the time of the seizure in April 2021, Maro Jewelers had in its inventory approximately $148,996.89 in confirmed stolen jewelry items.  This includes several items that exceed $10,000 in value, including two diamond rings stolen from Michigan locations of Kay Jewelers worth $19,999.99 each, and a loose diamond stolen from a Texas Jared location worth $13,240.00.

25.    The FBI has evidence–including a Maro Jewelers, Inc. receipt–indicating that Maro Jewelers purchased a diamond and gold from "Ramy," matching the description of a diamond stolen from Kay Jewelers in Noblesville, Indiana, on February 6, 2021, at only a fraction ($2,420) of its value ($7,799.99).  This diamond was recovered in the April 2021 search of Maro Jewelers.

26.    In addition, a similar transaction occurred on March 16, 2021.  On March 16, 2021, a female perpetrator stole a white gold solitaire ring worth $7,000 from Zales in the Fairlane Town Center, and then gave it to co-conspirator K.H.  Police never located the stolen diamond, but they did arrest K.H. coming out of Maro Jewelers with

approximately $2,078 in cash in his pocket.  The undersigned agent believes that K.H. likely sold the stolen diamond to Maro Jewelers, who acted as a fence, before the police arrived; that the money in K.H.'s pocket was the proceeds of the sale; that an individual at Maro Jewelers lied to the police about the true nature of the transaction; and that Maro Jewelers paid this low amount for the diamond because its proprietor knew, or had reason to believe, it was stolen.  Thus, K.H. sold the stolen diamond for approximately 30% of its market value, which is a similar discount to the one described in the paragraph above.

27.    Evidence in the FBI's possession also indicates that Maro Jewelers likely served as the fence for Brian Moore and Darrell Reed. These individuals have since pled guilty to related robberies (see paragraph 14 above).

28.    By operating as both a fence for stolen jewelry and a seller of non-stolen jewelry, Maro Jewelers conceals the stolen nature of the fenced items, and promotes the underlying unlawful activities.  Without a fence, the robberies would be impractical.

29.    In addition, on information and belief, Maro Jewelers profits

from the fencing of stolen jewelry (buying stolen jewelry cheap, and

reselling at a profit), then intermingles legitimate money with

illegitimate money earned from fencing, further concealing the nature,

source, location, and ownership of the stolen goods and proceeds

thereof.  This money laundering conspiracy, on information and belief,

includes intentional participation by individuals associated with Maro

Jewelers and the thieves themselves in an unlawful conspiracy to

violate 18 U.S.C. §§ 1956(a)(1) and 1957, in violation of 18 U.S.C. §

1956(h).

## **CLAIM FOR RELIEF**

30.    Plaintiff realleges and incorporates by reference every

allegation contained in paragraphs 1 through 29 above, any

subparagraphs thereunder, and Exhibit A to this Complaint.

31.    The Defendant *in rem* is property involved in violations of 18

U.S.C. §§ 1956(a)(1), 1956(h), and 1957 (money laundering), and/or is

the proceeds of underlying criminal offenses such as 18 U.S.C. § 1951

11

(Hobbs Act Robbery, and attempt and conspiracy to commit the same);

18 U.S.C. §§ 2314 and 371 (Interstate Transportation of Stolen Property

and conspiracy to commit the same); and 18 U.S.C. §§ 2315 and 371

(Receipt, Possession, and Sale of Stolen Property and conspiracy to

commit the same).

32.    The Defendant *in rem* is therefore subject to federal

forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) (property involved in

money laundering) and/or 18 U.S.C. § 981(a)(1)(C) (proceeds of money

laundering and/or the underlying criminal offenses).

## <u>CONCLUSION</u>

Plaintiff, the United States of America, respectfully requests that

a warrant for the arrest of the Defendant *in rem* be issued; that due

notice be given to all interested parties to appear and show cause why

the forfeiture should not be decreed; that judgment be entered declaring

the aforementioned Defendant *in rem* condemned and forfeited to the

United States of America for disposition according to law; and that the

United States of America be granted such other and further relief as

this Court may deem just and proper, together with the costs and

disbursements of this action.

Respectfully submitted,

Dawn N. Ison
United States Attorney

*/s/ K. Craig Welkener*
K. Craig Welkener
Assistant United States Attorney
211 W. Fort St., Ste. 2001
Detroit, MI 48226
(313) 226-0248
Kenton.welkener@usdoj.gov
DC Bar No. 1033585

Date: April 10, 2024

13

**<u>VERIFICATION</u>**

I, Matthew C. Schuff, state that I am a Special Agent of the

Federal Bureau of Investigation ("FBI").  I have read the foregoing

Complaint for Forfeiture and declare under penalty of perjury that the

facts contained therein are true and correct to the best of my knowledge

and belief, based upon knowledge possessed by me and/or on

information received from other law enforcement agents and employees

of the United States Government.

Matthew C. Schuff
Special Agent
Federal Bureau of Investigation (FBI)

Dated:  April 10, 2024

14